**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION - DAYTON**

| | | |
|---|---|---|
| KOSAL TITH, | ) | CASE NO. 3:13-CV-284 |
| | ) | |
| Plaintiff, | ) | JUDGE RICE |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT'S REPLY IN SUPPORT** |
| THYSSENKRUPP MATERIALS NA, | ) | **OF ITS MOTION TO DISMISS** |
| INC., | ) | **PLAINTIFF'S THIRD, FOURTH, AND** |
| | ) | **FIFTH CLAIMS FOR RELIEF AND** |
| Defendant. | ) | **REQUESTS FOR RECOVERY OF** |
| | ) | **PUNITIVE DAMAGES AND** |
| | ) | **ATTORNEY'S FEES** |

Defendant ThyssenKrupp Materials NA, Inc. ("Defendant" or "TKMNA") respectfully submits this Reply in Support of its Motion to Dismiss Plaintiff Kosal Tith's ("Plaintiff" or "Tith"), Third, Fourth, and Fifth Claims for Relief and Requests for Recovery of Punitive Damages and Attorney's Fees.

## I.  INTRODUCTION

Plaintiff has failed to offer any factual or legal justification to avoid dismissal of his state common law claims.  He fails to distinguish the cases cited by Defendant finding that common law causes of action premised on the exact same allegations as his statutory wage claims are preempted by the Fair Labor Standards Act ("FLSA"), and instead cites to three outlier district court cases that incorrectly interpret the FLSA and prevailing case authority and that are distinguishable in any event.  Plaintiff also improperly attempts to change the allegations in his Complaint and introduce an obsolete handbook from a predecessor entity that was not even in place during any time relevant to this action.  The law is clear that Plaintiff may not avoid dismissal by relying on new allegations and information not included in the Complaint.

Further, and in any event, Plaintiff's breach of contract and fiduciary duty claims fail as a matter of law.  His breach of contract claim, which he now claims is premised on an obsolete handbook issued by a predecessor entity 18 years ago, fails because under well-established Ohio law an employee handbook does not constitute a legally enforceable contract, and his reliance on that handbook is legally unsupportable.  His breach of fiduciary duty claim likewise fails based on well-established Ohio law holding that an employee-employer relationship does not give rise to a fiduciary relationship.  Finally, Plaintiff cannot maintain independent causes of action for punitive damages or attorney's fees nor has he pled any other claims that would entitle him to such relief.

Thus, as discussed in more detail below and in Defendant's moving brief, the Court should dismiss Plaintiff's Third, Fourth, and Fifth Claims for Relief, as well as his requests for punitive damages and attorney's fees.[1]

## II.    LAW AND ARGUMENT

### A.    The FLSA Preempts Plaintiff's State Common Law Claims.

In its initial moving brief, TKMNA identified a litany of federal appellate and district court decisions holding that the FLSA preempts state common law claims premised on the same allegations as an underlying FLSA wage claim.  (Doc. No.  11, PageID 45-47).  These cases correctly recognize that the FLSA has an elaborate enforcement scheme with exclusive remedies for alleged failure to pay minimum wage and overtime. While the statute permits states to promulgate statutes that provide for a higher minimum wage and more employee-friendly overtime rules, it preempts common law claims such as breach of contract, unjust enrichment,

---

[1]    Defendant reiterates that it expressly reserves and does not waive its objections and defenses to all of Plaintiff's claims, including without limitation, statute of limitations defenses and defenses to the class and collective claims.

and breach of fiduciary duty for the obvious reason that such claims render the FLSA's exclusive remedy provision and statute of limitations provisions superfluous. Plaintiff does not attempt to distinguish these legal authorities or purport to make any argument that they were wrongly decided.

Although the Sixth Circuit has not yet addressed the scope of FLSA preemption, it is significant that the only two federal appellate courts to have considered the issue have held that the FLSA precludes state common law claims like those asserted here. The Fourth Circuit Court of Appeals' decision in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), is the leading case addressing the preemptive effect of the FLSA and therefore is particularly instructive. As noted in TKMNA's moving papers, the Fourth Circuit in *Anderson* specifically held that the FLSA preempts state common law claims for breach of contract, negligence, and fraud. *Id.* at 194-195; (*see also* Doc. No. 11, PageID 45). In reaching this determination, the *Anderson* court emphasized that the FLSA's "unusually elaborate enforcement scheme" – combined with the fact that the statute "provides ***exclusive*** remedies for the enforcement of its own provisions" – made clear that the plaintiffs' state common law claims were preempted. *Anderson*, 508 F.3d at 193-194 (emphasis added) (collecting cases holding that the FLSA preempts state common law claims). Under substantially similar reasoning, the First Circuit also has concluded that "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA." *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) (citations omitted). Accordingly, a "plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA claim." *Id.*

The sound reasoning of the *Anderson* and *Roman* courts – and the vast majority of federal district courts – applies with equal force to the present circumstances. *See, e.g. Wood v. TriVita,*

*Inc.,* No. CV-08-0765-PHX-SRB, 2008 WL 6566637, *6 (D. Ariz. Sept. 18, 2008); *Chen v. St. Beat Sportswear, Inc.,* 364 F. Supp. 2d 269, 292-93 (E.D.N.Y. 2005); *Flores v. Albertson's, Inc.,* No. CV-01-0515 PA(SHX), 2003 WL 24216269, *5 (C.D. Cal. Dec. 9, 2003); *Alexander v. Vesta Ins. Group, Inc.,* 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001); *Petras v. Johnson,* No. 92-CIV-8298 CSH, 1993 WL 228014, *2, 4 (S.D.N.Y. June 22, 1993); *see also Moeck v. Gray Supply Corp.,* No. 03-1950 (WGB), 2006 WL 42368, *2 (D.N.J. Jan. 6, 2006); *Johnston v. Davis Sec., Inc.,* 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002). "Because the FLSA's enforcement scheme is . . . exclusive[,]" *Anderson*, 508 F.3d at 194, this Court should reject Plaintiff's transparent effort to circumvent that scheme by asserting state common law claims premised on the same allegations as his FLSA claim.

1.  *Plaintiff's cited authorities are inapposite, unpersuasive, and inconsistent with the plain language of the FLSA's savings clause.*

Plaintiff's opposition brief cites to three decisions adopting a minority view and holding that, in certain limited circumstances, some state common law claims (though not breach of fiduciary duty claims) may survive the FLSA's preemptive effect *at the pleading stage.*[2] (Doc. No. 18, PageID 81-83) (citing *Monahan v. Smyth Auto. Inc.*, No. 1:10-CV-00048, 2011 U.S. Dist. LEXIS 9877 (S.D. Ohio Feb. 2, 2011); *Woodall v. DSI Renal, Inc.*, No. 11-2590, 2012 U.S. Dist. LEXIS 42826 (W.D. Tenn. Mar. 27, 2012); *Dooley v. Trojan Labor of Nashville, LLC*, No. 3:13-00120, 2013 U.S. Dist. LEXIS 61455 (M.D. Tenn. Apr. 30, 2013). However, these cases

---

[2]    TKMNA cited a number of cases holding that the FLSA preempts Plaintiff's breach of fiduciary duty claim, but Plaintiff's opposition does not identify a *single decision* holding that such a claim is not preempted. The notable absence of any legal authority to support Plaintiff's position compels the conclusion that his breach of fiduciary duty claim be dismissed. (*Cf.* Doc. No. 11, PageID 46-47) (citing cases dismissing breach of fiduciary duty claims as preempted by the FLSA).

are distinguishable and, in any event, are premised on a flawed interpretation of the FLSA and its savings clause, *and* an incorrect reading of Second Circuit and Ninth Circuit legal authority.

As an initial matter, two of the three cases plaintiff cites (Doc. No. 18, PageID 81-84) found that FLSA preemption was inapplicable on the grounds that the plaintiffs' state common law claims did ***not*** require a showing that the defendant violated the FLSA. *Monahan*, 2011 U.S. Dist. LEXIS 9877 at *15; *Woodall*, 2012 U.S. Dist. LEXIS 42826, at *16-18. However, it is abundantly clear that Plaintiff's state common law claims as pled in the Complaint are founded upon the same facts as, and premised on violations of the FLSA, and therefore are duplicative of, his FLSA cause of action (and also his Ohio state wage law claim). (Doc. No. 11, PageID 46-47). In fact, Plaintiff's opposition brief explicitly states that his FLSA and common law claims all derive from the exact same "three pay practices" purportedly employed by TKMNA:

> These three pay practices violate the Fair Labor Standards Act and Ohio's Wage Payment Act. Further, these three pay practices breach contracts the Defendant entered into with Mr. Tith, breach fiduciary duties owed to Mr. Tith, and unjustly enrich the Defendant.

(Doc. No. 18, PageID 80) (internal parenthetical and citations omitted). Because Plaintiff's state common law claims stem from the same factual allegations as his FLSA claim (and his Ohio wage law claim), the authorities relied upon in his opposition brief are inapposite and do nothing to salvage his state common law claims.

The third case Plaintiff cites, *Dooley v. Trojan Labor of Nashville, LLC*, No. 3:13-00120, 2013 U.S. Dist. LEXIS 61455 (M.D. Tenn. Apr. 30, 2013), did not provide any meaningful analysis of FLSA preemption, but rather expressed its belief that there was arguably conflicting authority on the issue and therefore it declined to "wade into the thicket" of FLSA preemption on a motion to dismiss. *Dooley*, 2013 U.S. Dist. LEXIS 61455, *4-5. Because *Dooley* only

engaged in a cursory analysis of FLSA preemption, the decision is entitled to little, if any, weight.

To the extent that *Monahan*, 2011 U.S. Dist. LEXIS 9877, or *Woodall*, 2012 U.S. Dist. LEXIS 42826, can be read to support the contention that his state common law claims are not preempted, those decisions are unpersuasive because they are premised on a fundamental misunderstanding of the FLSA's saving clause. In this regard, the decisions relied upon by Plaintiff are premised on an unjustifiably expansive reading of the FLSA's savings provision. That provision provides that:

> "[n]o provision of [the FLSA] or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance ***establishing a minimum wage higher*** than the minimum wage established under this chapter ***or a maximum work week lower*** than the maximum workweek established under this chapter."

29 U.S.C. § 218(a) (emphases added). Thus, by its unambiguous terms, § 218(a) only preserves two areas of substantive rights under certain state wage laws: (1) minimum wage and (2) maximum work week hours. Nowhere does the statute's text suggest that Congress intended to preserve state common law claims such as those pled by Plaintiff here. As such, any decisions holding that the FLSA does not preempt state common law claims are directly at odds with the plain text of the FLSA's savings clause.

In the instant case, TKMNA only seeks to dismiss Plaintiff's common law claims (not his Ohio state wage law claim). None of his common law claims are based on laws by the Ohio state legislature to provide greater minimum wage or maximum hour protection. Instead, Plaintiff's unjust enrichment, breach of contract, and breach of fiduciary duty causes of action are pled to engage in burdensome discovery and to circumvent the FLSA's (and Ohio state wage

law) remedial scheme and statute of limitations.[3]  Plaintiff's thinly-disguised attempt to avoid the FLSA's "unusually elaborate enforcement scheme" under the guise of state common law claims should be rejected out of hand.  *Anderson*, 508 F.3d at 192–194 (internal quotation marks and citations omitted).

Finally, *Woodall* and *Dooley* misinterpret the holdings of the Second and Ninth Circuit on this issue and incorrectly assert that there is a split of authority on preemption.  The Second Circuit in *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234 (2d Cir. 2011), did not consider the same FLSA preemption issue currently before this Court, but rather addressed questions of supplemental jurisdiction and whether a plaintiff may maintain Rule 23 state **statutory** wage law claims and FLSA claims together under the FLSA's opt-in scheme. *Shahriar*, 659 F.3d at 248-249 (holding that New York's statutory minimum wage and overtime law was not preempted); *cf. Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 494 (W.D.N.Y. 2012) ("Although the Second Circuit has held that *statutory* wage claims under the [New York Labor Law] . . . are not preempted by the FLSA, it has not yet considered whether preemption applies when unpaid wages are sought, as here, via *common law* claims.") (emphasis in original). Indeed, other cases within the Second Circuit decided after *Shahriar* continue to dismiss state common law claims such as unjust enrichment and breach of contract on FLSA preemption grounds.  *See, e.g., Sampson v. MediSys Health Network, Inc.*, No. 10-CV-1342, 2012 U.S. Dist. LEXIS 103052, *24-26 (E.D.N.Y. July 24, 2012) (dismissing claims for breach of contract,

---

[3]     In fact, Plaintiff already has served interrogatories and document requests demanding that TKMNA provide information and documents **fifteen years** before the filing of his Complaint.  Notably, record retention rules under the FLSA and Ohio wage law only require retention of pay records for two or three years.  *Cf.* 29 C.F.R. §§ 516.5 and 516.6 (FLSA regulations requiring payroll records to be retained for three years and records on which wage computations are based (*e.g.*, time cards, piece work tickets, wage rate tables, work and time schedules, and records of additions to or deductions from wages) to be retained for two years) *with* Ohio Revised Code § 4111.08 (requiring payroll records to be retained for three years).

breach of the implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment, fraud, negligent misrepresentation, conversion, and estoppel as preempted by the FLSA); *Gordon*, *supra*, 847 F. Supp. 2d at 494.  Similarly, the Ninth Circuit in *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010), *vacated on other grounds by* 132 S. Ct. 74 (2011), addressed FLSA preemption of state *statutory* unfair business practices claims, and in *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1152-53 (9th Cir. 2000), addressed FLSA preemption of a fraud claim that was premised on conduct *outside* the scope of FLSA-related allegations.  Neither *Wang* nor *Williamson* addressed preemption of common law claims based upon the exact same facts as a plaintiff's FLSA and state statutory wage claim, like those asserted by Plaintiff here.  Indeed, other cases interpreting *Wang* and *Williamson* have recognized their limited scope and dismissed common law claims such as those pled here on preemption grounds. *See, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 533 n.16 (E.D.N.Y. 2011) ("[T]he Court finds *Wang* inapposite insofar as it involved a statutory claim that is plainly distinguishable from the state common law claims asserted by plaintiffs here.")

Therefore, this Court should follow the well-reasoned majority view that state common law claims are preempted by the FLSA.

### B.    The Court Should Reject Plaintiff's Attempt to Introduce Extrinsic Evidence and Rely on New Factual Allegations Not Alleged in The Complaint.

Plaintiff may not avoid dismissal by changing his allegations and introducing exhibits which were not included in his Complaint.  Plaintiff has raised the following for the first time in his opposition brief:

- The allegation that his unjust enrichment and breach of contract claims are based upon an alleged failure to pay wages "in work weeks in which Mr. Tith worked less than 40 hours;" ((Doc. No. 18, PageID 83-84); and

- The employment handbook dated 1996 attached as Exhibit A to Plaintiff's opposition brief; (Doc. No. 18-1).

Nowhere in the Complaint does Plaintiff contend that he worked less than 40 hours in a week but was not paid for those hours. Rather, he asserts that he regularly worked more than 40 hours per week (Doc No. 11, ¶ 40), and that he seeks overtime pay through his unjust enrichment claim (*Id.* at ¶ 52). Moreover, as discussed below, the handbook was issued from a predecessor entity well outside any applicable statute of limitations period and cannot form the basis of a breach of contract claim in any event.

Plaintiff's attempt to rely on new allegations and an obsolete document is wholly improper and should be categorically rejected because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *United States v. Medquest Assocs., Inc.*, 702 F. Supp. 2d 909, 918 n.2 (M.D. Tenn. 2010) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012). Although Plaintiff cites one decision holding that a court may consider extrinsic materials when they are "attached to the motion to dismiss that are referred to in the complaint" *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 741 (S.D. Ohio 2010), he cites no cases holding that it is appropriate to consider new documents and factual allegations submitted for the first time in an *opposition brief*. Thus, when ruling on TKMNA's Motion to Dismiss, the Court should disregard any new allegations, documents, or legal theories raised by Plaintiff in his opposition brief.

**C.    Plaintiff's Claim for Breach of Written Contract Should Be Dismissed.**

>    *1.    It is black-letter law that employment handbooks do not create legally enforceable contractual rights.*

Plaintiff's opposition does not, and cannot, contradict the simple fact that an employee handbook is not a binding contract.  Indeed, Ohio courts considering this issue have unanimously held that, absent a specific statement that the parties intended for a handbook to impose binding contractual obligations, an employment handbook cannot serve as the predicate for a breach of contract claim.[4]  Simply put, "employee handbooks do not constitute an employment contract." *Sims v. Village of Midvale*, No. 2012 AP 03 0021, 2012 WL 6681851, *3 (Ohio Ct. App. Dec. 18, 2012).    TKMNA's Motion to Dismiss cites numerous authorities in support of this proposition, including *Tohline v. Central Trust Co., NA,* 48 Ohio App. 3d 280 (Ohio Ct. App. 1988); *Howell v. Whitehurst Co.*, No. L-05-1154, 2005 WL 3078196 (Ohio Ct. App. Nov. 18, 2005); *Fennessey v. Mt. Carmel Health Sys., Inc.*, No. 08AP-983, 2009 WL 2331868 (Ohio Ct. App. July 30, 2009); *Karnes v. Doctors Hosp.*, 555 N.E.2d 280 ( Ohio 1990); *Callahan v. Niles*, 2011–T–0025, 2012 WL 34437 (Ohio Ct. App. Jan. 6, 2012).  Plaintiff makes *no attempt* to distinguish or otherwise address any of these above-listed cases in his opposition brief.

Instead, Plaintiff cites *Finsterwald-Maiden v. AAA S. Cent. Ohio*, 115 Ohio App. 3d 442 (Ohio Ct. App. 1996), a case that provides no support for his claim.  In fact, *Finsterwald-Maiden* actually supports Defendant's position, as the court explicitly held that the employee handbook

---

[4]    Plaintiff argues that "Defendant's argument is directed solely to Mr. Tith's assertion that he and the Defendant entered into a contract whereby the Defendant agreed to pay double time on Sundays."  (Opp. at 6). However, the Sunday double pay provision is the *only written contract* alleged in the Complaint.  (*See* Doc. No. 1, ¶¶ 28, 48).  To the extent that Tith alleges an implied, unwritten contract to pay a wages according to the FLSA, such claim would be preempted for the same reasons set forth above. If Tith is now arguing that the employee handbook created some contractual right to payment under the FLSA based on a *written contract*, that claim is not pleaded in the Complaint, and in any event it would fail for the same reasons set forth herein.

in question was "not a legally binding contract" and therefore affirmed the lower court's decision refusing to enforce a handbook provision regarding payment of bonuses and commissions. *Id.* at 444. In reaching this determination, the *Finsterwald-Maiden* court observed that the handbook in question "expressly states that it is not a contract" and also recognized that "[i]n situations where an employee handbook disclaims any intent to create a contractual relationship, courts have found no mutual assent by the parties to be bound by the handbook's provisions." *Id.* at 447. The same is true here (including in the obsolete handbook Plaintiff attached to his opposition brief). The *Finsterwald-Maiden* court further noted that "there is no evidence that [defendant] negotiated with [plaintiffs] concerning the content of the handbook's provisions, which is another factor courts have considered in determinations of contractual intent." *Id.* at 447. Here, Plaintiff has not alleged that he negotiated with Defendant as to the terms and conditions of his employment (in fact, he now claims that he did not even read the 2006 employee handbook at issue in this case). As such, Plaintiff's reliance on *Finsterwald-Maiden* is misplaced and provides no support for his breach of contract of claim.

Plaintiff's reliance on *South v. Browning*, No. CA2012-09-088, 2013 WL 1558049 (Apr. 15, 2013), is similarly unavailing. In *South*, there was "evidence in the record that the parties agreed to be bound by the policies set forth in the Policy Manual." *Id.* at *3. As discussed above, no facts evidencing a mutual intention to be bound have been alleged in the present matter. Moreover, the *South* court expressly limited its holding to cases involving "company policies regarding payment, or nonpayment, of personal or vacation time upon termination of employment..." *Id.* at *3. No such policies are at issue in the instant case. Furthermore, the *South* decision does not in any way suggest that the handbook at issue there contained an express disclaimer of contractual liability like the TKMNA handbook here.

{4643619:}                                                          11

The law on this issue is straightforward and well-settled. The Ohio Supreme Court has held that no contractual rights or obligations are created by an employee handbook that "specifically disclaims any intent to create a contractual relationship between employer and employee." *Karnes*, *supra*, 555 N.E.2d at 282. That is precisely the case here. Because Plaintiff has not, and cannot, state an actionable claim for breach of written contract based on the provisions of the employee handbook, the cause of action should be dismissed.

> 2. *The supposed employee handbook attached to Plaintiff's opposition does nothing to bolster his breach of contract claim.*

In an attempt to resuscitate his breach of contract claim, Tith attaches a purported employee handbook dated 1996. This handbook is irrelevant and immaterial for a host of reasons. First, the handbook contains an express disclaimer of all contractual liability, and thus, as discussed above, does nothing to bolster Plaintiff's breach of contract claim. Second, the four corners of the handbook show that it does not apply to Defendant TKMNA, and that any claim based on this handbook is time-barred.

As a threshold matter, the handbook upon which Tith improperly relies expressly states that "[t]he language used in this manual is not intended to create, nor is it to be construed to constitute a contract between Copper and Brass Sales, Inc. and any of its employees for either employment or the providing of any benefit." (*See* Doc. No. 18-1, PageID 94). As discussed above, this language "specifically disclaims any intent to create a contractual relationship between employer and employee" and thus creates no contractual rights or obligations between the parties under well-established Ohio law. *Karnes, supra,* 555 N.E.2d at 282.

Plaintiff's counsel states that he wishes to conduct discovery in an attempt to show that, despite this clear and unequivocal disclaimer, there *was* somehow a mutual intent to treat the

handbook as binding. (Doc. No. 18, PageID 87-88). However, a plaintiff is not entitled to conduct a discovery fishing expedition if he has not stated a legally cognizable claim. "[T]here is no general right to discovery upon filing of the complaint. The very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003). Moreover, a plaintiff cannot avoid a meritorious motion to dismiss by speculating as to possible facts which may come out in discovery: "It is insufficient to speculate on what testimony may reveal; the facts must be plead." *Hill v. Ohio State Univ. T & L*, No. 2:12-cv-984, 2013 WL 2295881, *3 (S.D. Ohio May 24, 2013).

Additionally, to the extent Plaintiff argues that there was an implied oral agreement contradicting the four corners of the employee handbook, such an argument must be rejected. This is because evidence of a purported implied oral agreement would be inadmissible pursuant to the parole evidence rule, which precludes a party from introducing any extrinsic evidence contradicting the clear and unambiguous terms of a written document. *See, e.g., Ed Schory & Sons, Inc. v. Society Nat'l Bank*, 662 N.E.2d 1074, 1080-81 (Ohio 1996). This argument is also flatly contrary to the Ohio cases addressing employee handbooks, which hold that a "disclaimer *manifests the absence of mutual assent to create a contract*, and a contract will thus not be implied based on this handbook." *Tohline v. Central Trust Co., NA*, 549 N.E.2d 1223, 1227 (Ohio Ct. App. 1988) (emphasis added).

> 3.    *The obsolete 1996 handbook relied upon by Plaintiff is irrelevant and immaterial because it was not issued by TKMNA and, moreover, any contract claim based on the handbook is time-barred.*

In addition to the foregoing deficiencies, the 1996 handbook is not properly before the Court. It was not referenced in the Complaint and clearly does not apply to the claims in this

case as it predates policies in place within the applicable statute of limitations period and was not even issued by Defendant.[5]  The handbook predates Defendant's 1997 purchase of Copper & Brass Sales, Inc. and clearly was superseded by later handbooks, pursuant to Defendant's right, as expressly reserved, to change, modify, and amend its policies.  There is no dispute Plaintiff was an employee at-will, and his continued employment after any change in policy and pay practices also undermines his reliance on the 1996 handbook.  *See, e.g., Whisman v. Ford Motor Co.*, 157 Fed. App'x 792, 801 (6th Cir. 2005) (holding that "[w]hen [defendant] changed the compensation terms of the plaintiffs' at-will employment, the plaintiffs' proper remedy was not to sue for breach of contract; it was to attempt to negotiate a more favorable benefits and compensation package, or quit," and concluding that "[b]ecause the plaintiffs did not quit, but continued to work for [defendant], even after [defendant] altered its overtime and annual incentive policies, the modification to the plaintiffs' employment agreements was supported by consideration"); *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 863 (S.D. Ohio 2003) (finding continued employment by an at-will employee following a change in policy sufficient to constitute consideration to bind the employee to the modified policy and collecting Ohio cases from "a majority of the Ohio Courts of Appeals" supporting same).

---

[5]     Plaintiff may not amend his complaint by now referencing this obsolete document.  It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Mariano v. Borough of Dickson City*, No. 3:13-0097, 2013 WL 6234622, n.2 (M.D. Pa. Dec. 2, 2013) (refusing to consider a collective bargaining agreement which the plaintiff attached for the first time in opposition to a motion to dismiss); *see also Madu, Edozie & Madu, PC v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122 (S.D.N.Y. 2010) ("a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss."); *DeLuca v. AccessIT Group, Inc.*, 695 F.Supp.2d 54, 59 (S.D.N.Y. 2010)(documents attached for the first time in opposition to motion to dismiss "are not part of the pleadings and will be excluded in deciding this motion to dismiss.")  The purported 1996 handbook was not attached to the Complaint, is not part of the pleadings in this matter, and therefore is not properly before the Court.

{4643619:}                                                14

Moreover, "courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 460 (6th Cir.1999); *see also Kuhn v. AIG Nat'l Ins. Co.*, No. 5:09-CV-1202, 2009 WL 5219034, *3 (N.D. Ohio Dec. 31, 2009) (granting motion to dismiss as to all defendants not named in the operative contract). Defendant cannot be bound by a 1996 handbook issued by a predecessor entity that was superseded by more recent policies and handbooks.

Finally, there is no allegation that Tith worked on Sundays throughout the entirety of his employment or at any time when the purported double-time policy purportedly was in place.

In sum, Plaintiff has not alleged any facts or presented any law to support a contract claim against Defendant based on any handbook. Neither Defendant's handbooks nor the handbook from a predecessor entity constitute a contract by their own terms and well-established Ohio law. Accordingly, the breach of contract claim fails as a matter of law and must be dismissed with prejudice.

### D. Plaintiff's Fifth Claim for Breach of Fiduciary Duty Fails Because There Was No Fiduciary Relationship Between The Parties.

Plaintiff's claim for breach of fiduciary duty likewise must be dismissed as a matter of law. Tith fails to cite even a *single case*, from any jurisdiction, holding that a fiduciary duty arises from a garden-variety employment relationship. Plaintiff's attempt to convert an unexceptional unpaid wages claim into a breach of fiduciary claim is unprecedented, and is wholly unsupported by the law.

Defendant's moving papers cite numerous cases holding that a fiduciary duty is not created within the context of an employment relationship. Again, Plaintiff's opposition does not distinguish or discuss any of these cases. *See, e.g., Swartz v. Oracle Corp.*, 787 F. Supp. 2d 686,

693 (N.D. Ohio 2011); *Olander v. Ohio Envtl. Protection Agency*, 134 Ohio App. 3d 723, 726 (Ohio Ct. App. 1999), *Geygan v. Queen City Grain Co.*, 71 Ohio App. 3d 185, 191 (Ohio ct. App. 1991); *Duran v. AT&T Corp.*, No. C-2-99-418, 2000 WL 33592869 (S.D. Ohio Aug. 31, 2000). In fact, the only fiduciary duty case cited in the opposition is *McConnell v. Hunt Sports Entertainment*, 132 Ohio App. 3d 657 (Ohio Ct. App. 1999). *McConnell* is entirely inapposite as it is not an employment case (it involved an application for an NHL hockey franchise) and, in any event, ultimately held that there was no fiduciary relationship between the parties.

Instead, Tith asks this Court to hold that TKMNA undertook a fiduciary duty to him because Tith's supervisor engaged in the completely lawful and unremarkable act of editing his timecard, calculating his wages for him, and (he alleges) reduced the amount of hours he worked.[6] (Opp. at 11). *See Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862, 870 (S.D. Ohio 2005) (denying motion to conditionally FLSA collective action and noting "there is nothing inherently improper or unlawful about editing the timekeeping records" and that "[t]here are many legitimate reasons why [such] changes might have been made"). Plaintiff does not explain how these allegations set this case apart from any of the dozens of FLSA cases filed across the country every day, much less how these allegations create a "special relationship of trust" which would justify the imposition of the highest fiduciary duty under law.

Tith is asking this Court to adopt a novel and unprecedented theory of fiduciary duty law in the employment context which would drastically expand the definition of a fiduciary under Ohio law and would radically alter the landscape of wage and hour litigation across the country. Under *Erie Railroad v. Thompkins,* 304 U.S. 64 (1938) federal district courts must apply the law

---

[6]     Defendant denies Plaintiff's allegations that any adjustments were improper and does not waive, but expressly preserves, all of its defenses to Plaintiff's claims.

of Ohio as it has been set forth by the Ohio Supreme Court, and the Sixth Circuit has cautioned that federal trial courts should exercise restraint when asked to declare new or novel principles of state law.  *See Grubb v. WA Foote Mem'l Hosp., Inc.* 741 F.2d 1486, 1500 (6th Cir. 1984), *reh'g granted on unrelated grounds at* 759 F.2d 546 (6th Cir. 1985); *see also Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 809 (6th Cir. 1987) ("We decline the invitation to expand Ohio law in this case to encompass a previously unrecognized cause of action…")

In sum, Plaintiff's arguments against dismissal of his breach of fiduciary duty claim have been rejected by every court which has considered them.  Accordingly, it should be dismissed with prejudice.

### E.     Plaintiff's Requests For Attorney's Fees And Punitive Damages Should Be Dismissed.

Finally, Tith's independent claims for attorney's fees and punitive damages should be dismissed.  The only cause of action which could even potentially give rise to a punitive damages award is Tith's claim for breach of fiduciary duty.  For the reasons set forth above, that claim must be dismissed, and the punitive damages claim should be dismissed along with it.

Again, Tith does not cite a *single case* holding that punitive damages awards are available in wage and hour claims.  None of the cases cited in the opposition brief involve an employment dispute.  Instead, they simply set forth general statements of the law regarding the availability of punitive damages in tort actions.  In the instant case, none of Tith's claims sound in tort and therefore his cited authorities are entirely inapposite.[7]

---

[7]       Although punitive damages may be available for breach of fiduciary duty claims, that cause of action fails as a matter of law and must be dismissed for the reasons discussed *supra*.

Tith's punitive damages claim also fails because the allegations of the Complaint do not show any "actual malice" on the part of TKMNA. Although Tith argues that he is not required to plead sufficient facts to show actual malice, this contention is incorrect as a matter of law. Federal pleading standards require that a "plaintiff must allege in the complaint facts sufficient to raise an inference of actual malice in order present a claim for punitive damages." *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan*, No. 07-CV-1005, 2008 WL 746669, *12 (N.D. Ohio Mar. 18, 2008) (citing *Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05-CV-7191, 2006 WL 1174228, *2 (N.D. Ohio Apr. 18 2006)); *Patel v. Zervas*, No. 2:13-CV-499, 2013 U.S. Dist. LEXIS 173406, *8 (S.D. Ohio Dec. 10, 2013) ("plaintiff must allege facts in the complaint from which the essential element of actual malice may be inferred."). Here, Plaintiff has not alleged any facts from which a reasonable jury could conclude that TKMNA acted with "actual malice" towards him, or that its alleged actions were characterized by "hatred, ill will or a spirit of revenge." As held in *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1322 (Ohio 1983), the bare allegation that defendant's actions were "willful and wrongful" is not sufficient to give rise to an inference of actual malice. Plaintiff is attempting to stretch a garden-variety claim for underpaid wages into something more. However, his claims have no sound basis in fact or law and should be rejected.

Finally, Tith argues that, under Ohio law, attorney's fees are recoverable when punitive damages are awarded, citing *Sivit v. Village Green of Beachwood*, No. 98401, 2013 Ohio App. LEXIS 68, *29–*30 (Ohio Ct. App. 2013). However, as set forth above, Tith has not alleged a cognizable claim for punitive damages. Thus, his claim for attorney's fees should also be dismissed.

## CONCLUSION

Based on the foregoing, and the arguments set forth in TKMNA's initial moving papers, the Court should dismiss Plaintiff's Third, Fourth, and Fifth Claims for Relief and Requests, as well as his requests for punitive damages and attorney's fees.

Respectfully Submitted,

/s/ *William J. O'Neill*
William J. O'Neill (0029936)
Douglas B. Schnee (0063643)
McDONALD HOPKINS LLC
600 Superior Avenue, East – 21st Floor
Cleveland, OH 44114
woneill@mcdonaldhopkins.com
dschnee@mcdonaldhopkins.com
Phone: (216) 348-5400
Fax: (216) 3458-5474

Nigel F. Telman
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
ntelman@proskauer.com
Phone (312) 962-3548
Fax: (312) 962-3551

Katharine Parker
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
kparker@proskauer.com
Phone: (212) 969-3000
Fax: (212) 969-2900

Christopher L. Williams
Charles J. Stiegler
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
cwilliams@proskauer.com
cstiegler@proskauer.com
Phone:  (504) 310-4088
Fax:  (504) 310-2022

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the **9th** day of **January, 2013,** a true and correct copy of the

foregoing document was electronically filed with the Clerk of the Court using the CM/ECF

system which will send notification of filing to all counsel of record.

/s/ *William J. O'Neill*

William J. O'Neill (0029936)

*Counsel for Defendant*

{4643619:}