# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION - DAYTON

| | |
|---|---|
| KOSAL TITH, | CASE NO. 3:13-CV-284-WHR |
| Plaintiff, | JUDGE RICE |
| vs. | JOINT MOTION TO APPROVE SETTLEMENT |
| THYSSENKRUPP MATERIALS NA, INC., | |
| Defendant. | ORAL ARGUMENT REQUESTED |

The parties, Plaintiff Kosal Tith ("Plaintiff" or "Tith") and Defendant ThyssenKrupp Materials NA, Inc. ("Defendant" or "TKMNA"), jointly move the Court for preliminary approval of the settlement of all claims in this action as set forth in the Settlement Agreement submitted to this Court for in camera review and, specifically, for an order:

(1) Preliminarily approving the terms of the Settlement Agreement;

(2) Conditionally certifying the Proposed Settlement Collective and Proposed Ohio State Law Settlement Class (as defined below);

(3) Appointing Bieser, Greer & Landis, LLP and attorneys Charles F. Shane, James H. Greer, and Thomas M. Hess, Jr. as Collective and Class counsel and Kosal Tith as representative of the Proposed Settlement Collective and Proposed Ohio State Law Settlement Class;

(4) Directing the parties to send notice of this settlement to the Proposed Settlement Collective and Proposed Ohio State Law Settlement Class, and proceed with the Claims Process as set forth in the Settlement Agreement;

(5) Pending this Court's decision on the Final Approval Hearing and to aid in this Court's jurisdiction and prevent a multiplicity of suits, barring putative members of the Settlement Collective and Ohio State Law Settlement Class from instituting a lawsuit against the Defendants in any

1

court that asserts claims that would be discharged upon Final Approval of the Settlement; and

(6) Setting a hearing date for Fairness Hearing for final approval of this settlement

This motion is brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23. A Memorandum in support of the motion is attached hereto. A proposed order approved by both parties is also being submitted for this Court's convenience and consideration.

Respectfully Submitted,

| | |
|---|---|
| /s/Charles F. Shane | /s/William J. O'Neill |
| Charles F. Shane (0062494), TA | William J. O'Neill (0029936) |
| James H. Greer (0046555) | Douglas B. Schnee (0063643) |
| Thomas M. Hess, Jr. (0089667) | McDONALD HOPKINS LLC |
| BIESER, GREER & LANDIS LLP | 600 Superior Avenue, East – 21st Floor |
| 400 PNC Center | Cleveland, OH 44114 |
| 6 North Main Street | woneill@mcdonaldhopkins.com |
| Dayton, Ohio 45402-1908 | dschnee@mcdonaldhopkins.com |
| Telephone: (937) 223-3277 | Telephone: (216) 348-5400 |
| Facsimile: (937) 223-6339 | Facsimile: (216) 3458-5474 |
| E-mail: cfs@bgllaw.com; jhg@bgllaw.com; tmh@bgllaw.com | *Counsel for Defendant* |
| *Attorneys for Plaintiff* | Katharine Parker (pro hac vice) |
| | PROSKAUER ROSE LLP |
| | Eleven Times Square |
| | New York, New York 10036 |
| | kparker@proskauer.com |
| | Telephone: (212) 969-3000 |
| | Facsimile: (212) 969-2900 |
| | *Of counsel for Defendant* |
| | |
| | Nigel F. Telman (pro hac vice) |
| | PROSKAUER ROSE LLP |
| | 70 West Madison, Suite 3800 |
| | Chicago, Illinois 60602 |
| | ntelman@proskauer.com |
| | Telephone: (312) 962-3550 |
| | Facsimile: (312) 962-3551 |
| | *Of counsel for Defendant* |

Charles J. Stiegler (pro hac vice)
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
cstiegler@proskauer.com
Telephone:  (504) 310-4088
Facsimile:  (504) 310-2022
*Of counsel for Defendant*

7860/74983-019 current/45592181v1										10/17/2014 9:44 pm

## JOINT MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**I.     INTRODUCTION.**

This action was filed by former TKMNA employee Kosal Tith, on behalf of himself and other similarly situated TKMNA hourly employees, seeking recovery of alleged unpaid wages. Tith alleges that he was underpaid because he worked through meal breaks without receiving pay, worked on Sundays without being paid in full, and because his supervisor reduced the recorded amount of time worked on his timesheet. Tith brought both individual and class claims under the Fair Labor Standards Act ("FLSA") and the Ohio Wage Payment Law ("OWPA"), along with Ohio common law claims for breach of contract, unjust enrichment, and breach of fiduciary duty. The complaint seeks certification of a class action under Fed. R. Civ. P. 23 (as to Ohio employees only) and as a collective action under 29 U.S.C. § 216(b) (as to all TKMNA employees nationwide).

After much negotiation, the parties agreed to a tentative class/collective definition limited to hourly, non-union employees who worked in warehouse positions for TKMNA's Copper & Brass division. TKMNA provided Plaintiff's counsel with all timekeeping records for this group of employees dating back three years before the filing of the complaint (which is the maximum limitations period under the FLSA). After a full day of mediation before Judge Michael Newman in June 2014, the parties agreed to a compromise settlement of all claims on behalf of the proposed collective and class, which totals 312 employees. The final terms of the settlement are reflected in the Settlement Agreement which is being submitted for in camera review contemporaneously with this Motion.

1

The parties therefore jointly request that this Court enter an order:

(1) Preliminarily approving the terms of the Settlement Agreement;

(2) Conditionally certifying the Proposed Settlement Collective and Proposed Ohio State Law Settlement Class (as defined below);

(3) Appointing Bieser, Greer & Landis, LLP and attorneys Charles F. Shane, James H. Greer, and Thomas M. Hess, Jr. Collective and Class counsel Proposed Settlement Collective and Proposed Ohio State Law Settlement Class;

(4) Directing the parties to send notice of this settlement to the Proposed Settlement Collective and Proposed Ohio State Law Settlement Class, and proceed with the Claims Process as set forth in the Settlement Agreement;

(5) Pending this Court's decision on the Final Approval Hearing and to aid in this Court's jurisdiction and prevent a multiplicity of suits, barring putative members of the Settlement Collective and Ohio State Law Settlement Class from instituting a lawsuit against the Defendants in any court that asserts claims that would be discharged upon Final Approval of the Settlement; and

(6) Setting a hearing date for Fairness Hearing for final approval of this settlement

## II. PROCEDURAL HISTORY AND SETTLEMENT TERMS.

### A. Background of Litigation.

On August 23, 2013, Tith filed a complaint containing individual and class-wide claims under the FLSA, the OWPA, and Ohio state common law. On November 12, 2013, TKMNA filed a Motion to Dismiss the Ohio common law and contract claims as set forth in the 3rd, 4th, and 5th causes of action of the Complaint. On December 16, 2013, Tith filed an early motion for conditional collective certification pursuant to 29 U.S.C. § 216(b). Defendant vigorously opposed this motion for conditional certification at oral argument on January 13, 2014 because, among other things, Tith had failed to show the existence of TKMNA timekeeping policies or practices that were actually unlawful or that these policies were uniform across TKMNA locations. On January 17, 2014, the parties filed a joint motion to withdraw the motion for

conditional certification, which the Court granted. The parties further agreed to postpone hearing on Defendant's motion to dismiss until after an early mediation could be completed.

In the weeks leading to the mediation, the parties exchanged written discovery and Defendant produced a significant amount of written and electronic information related to the relevant claims and defenses.[1] Most notably, Defendant produced all of its electronic time records for hourly, non-union warehouse employees who worked for TKMNA's Copper and Brass division, nationwide,[2] for the time period beginning on August 23, 2010 (three years before the date of filing the complaint). Defendant also produced copies of the relevant employment handbooks and employment policies, including meal break policies, overtime and scheduling policies, time keeping policies, and time adjustment policies; and other information regarding the size and scope of the putative class. Defendant retained Resolution Economics to analyze the time records and any and all adjustments made to time cards of members of the Proposed Settlement Collective and Proposed Ohio State Law Settlement Class (which adjustments, Defendant urges, were both appropriate and lawful). Plaintiffs' counsel thoroughly questioned Resolution Economics regarding the source of the data which they used, the methods which they used to analyze the data, and any assumptions which they relied on to perform their analysis to factor Resolution Economics' conclusions into their assessment of the case and the appropriateness of the proposed settlement.

---

[1] These documents were produced under a confidentiality agreement and the mediation privilege, Fed. R. Evid. 408.

[2] The collective does not include TKMNA employees in California, as they are parties to a pending class action settlement in California state court, *Chacon v. ThyssenKrupp Materials NA*, Los Angeles Superior Ct. No. BC510966, which has been preliminarily approved by that Court.

The parties held an in-person mediation with Judge Newman on June 3, 2014, which resulted in a settlement that both parties agreed was fair and appropriate. The parties further agreed to allocate this settlement based on the number of qualified workweeks worked by each member of the proposed class or collective.

**B.     Terms of Settlement.**[3]

The essential terms of the settlement are fairly straightforward. The Settlement Agreement defines two separate funds – one for members of the Ohio State Law Settlement Class, which includes all current and former non-exempt, non-union, hourly-paid employees of Defendant's Copper & Brass division who worked in a Warehouse Position within the state of Ohio from August 23, 2010 up to and including the date of preliminary approval of this settlement, and one for the Settlement Collective, which includes all current and former U.S.-based non-exempt, non-union, hourly-paid employees of Defendant's Copper & Brass division who worked in a Warehouse Position outside of the states of California and Ohio from August 23, 2010 up to and including the date of preliminary approval of this settlement. (Settlement Agreement, §§ 2.24-2.25). The fund for the Ohio State Law Settlement Class is $11,700 and compensates class members for claims brought under the FLSA and Ohio law. (*Id.*, § 6.2). The fund for the members of the nationwide Settlement Collective is $205,000. (*Id.*, § 6.2).

Each individual member of the Settlement Collective or Ohio State Law Settlement Class will be entitled to a *pro rata* payment based on the number of qualified workweeks[4] he or she

---

[3] This section sets forth the central terms of the proposed settlement but is not exhaustive; the Court is invited to review the Settlement Agreement for the full terms and conditions of the settlement.

4

worked during the proposed class period. (*Id.*, §§ 6.3-6.4). Dahl Administration, the proposed claims administration firm chosen by Plaintiffs' counsel, will mail notices of settlement, Claim Forms and Requests-For-Exclusion Forms to all potential members of the Ohio State Law Settlement Class and the Settlement Collective, on a Notice Date to be set by the Court. (*Id.*, § 18). The parties hereby request that the Court set the Notice Date for the collective and class-wide mailing within 45 days after the preliminary approval of this settlement. (*Id.*, § 2.19). The proposed Notice, including the Claim Form and Request-For-Exclusion, is attached as Exhibit A to the Settlement Agreement.

Once the notice is mailed, members of the Settlement Collective will have 45 days to submit Claim Forms in order to opt-in to this lawsuit and settlement, and members of the Ohio State Law Class will have the same amount of time to request that they be excluded from the settlement or to file objections. (*Id.*, § 2.2).

The parties further request that the Court set a date for a Fairness Hearing, to take place within 90 days of the Notice Date, in order to confirm class and collective certification, rule on final approval of the settlement, and enter its judgment. (*Id.*, § 23). At that time, Plaintiffs' counsel will move for an award of attorneys' fees and costs along with an Enhancement Payment for Plaintiff in recognition of his service as named representative. (*Id.*, §§ 7-8).

### III. LEGAL STANDARD.

In an FLSA case, any "proposed settlement is subject to approval by the Court." *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *2 (N.D. Ohio. March 8, 2010).

---

[4] "Qualified workweek" is defined as any week during which the employee worked at least one shift (excluding vacation, sick leave, disability leave, and other similar non-productive shifts). (Settlement Agreement, § 2.38).

An FLSA settlement shall be approved if it "reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute … in order to promote the policy of encouraging settlement of litigation." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, *2 (S.D. Ohio June 24, 2011) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-3 (11th Cir. 1982) (internal quotations omitted)). If the parties to an FLSA suit are both represented by counsel, there is a "strong presumption in favor of finding a settlement fair." *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, NA*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Similarly, Fed. R. Civ. P. 23(e) requires that the court must approve the terms of a class action settlement. The standard of review is essentially identical, as the question in both circumstances is whether the settlement is "fair, reasonable, and adequate." *Gentrup, supra,* 2011 WL 2532922 at *2.

Courts within the Sixth Circuit have adopted a seven-factor test in determining whether a class or collective settlement is fair and reasonable:

>(1) the risk of fraud or collusion;
>
>(2) the complexity, expense and likely duration of the litigation;
>
>(3) the amount of discovery completed;
>
>(4) the likelihood of success on the merits;
>
>(5) the opinion of class counsel and representatives;
>
>(6) the reaction of absent class members; and
>
>(7) public interest in the settlement

6

*Gentrup, supra*, 2011 WL 2532922 at *2 (citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), and *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). The relative importance of each factor depends on the facts of each specific case, but "inquiry into one factor necessarily overlaps with inquiry into another." *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002).

## IV. LAW AND ARGUMENT.

The parties' settlement reflects a fair and reasonable compromise of a "bona fide" dispute regarding the amount (if any) of unpaid wages due. *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *2 (N.D. Ohio Mar. 8, 2010). Plaintiff alleges that he and other similarly situated employees worked through lunch breaks and were subject to an illegal time rounding and editing policy. Defendant denies these allegations or the existence of any illegal policies; and contends that its employees are properly paid for all overtime worked. As discussed in more detail below, the parties further disagree as to whether the case is appropriate for class or collective certification (absent this settlement), and whether Plaintiff's state law claims are viable as a matter of law. Thus, there is a "bona fide" dispute both as to Defendant's liability and to the amount of damages, and the Settlement Agreement provides for a fair and reasonable compromise of those disputes. Further, each of the factors addressed below favors approval of the settlement.

### A. There is No Risk of Fraud or Collusion.

Courts find no fraud or collusion where both parties are represented by counsel and the settlement amount appears to be fair. *Helms v. Cent. Florida Reg'l Hosp.*, 2006 WL 3858491,

7

\*4 (M.D. Fla. Dec. 21, 2006); *see also Schneider v. Goodyear Tire & Rubber Co.*, 2014 WL 2579637, \*2 (N.D. Ohio June 9, 2014) (finding no risk of fraud or collusion where "the settlement was the result of Court-supervised arms-length negotiations between two parties that were represented by able counsel.").

Each party in this case was independently represented by counsel. Plaintiff was represented by Bieser, Greer, and Landis LLP, and Defendant was represented by Proskauer Rose LLP. All counsel involved have extensive experience in litigating FLSA claims, including claims for alleged unpaid wages and overtime liability. Each counsel was obligated to and did vigorously represent its client's rights. In addition, the mediation in this matter was conducted in an open and above-board manner and was ably assisted by Magistrate Judge Newman. See *Bert v. AK Steel Corp.*, 2008 WL 4693747, \*2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). There is no evidence to suggest that this settlement is anything other than a genuine and fair compromise of the parties' claims. Thus, this factor weighs in favor of approval.

**B.     The Complexity, Expense and Likely Duration of the Litigation.**

There is little doubt that this action, if not settled, will lead to lengthy, complex, and expensive litigation. Plaintiff seeks certification of a nationwide FLSA collective containing hundreds of employees who work at different plants and perform different jobs under different supervisors. Indeed, the putative class and collective members work, or have worked, at 25 separate locations in 21 states spread widely across the country. Each location is subject to its own unique timekeeping practices, and each individual supervisor has a different process for

8

time entry and editing. Defendant disputes that this disparate group is appropriate for nationwide collective certification, but is willing to stipulate to certification for settlement purposes only. If the settlement is not approved, the parties will proceed to a lengthy and costly precertification phase of discovery, culminating in substantial motion practice.

To prove their substantive claims, Plaintiff and the other putative claimants will be required to put on some evidence showing each instance where an employee worked through lunch or suffered a loss of paid time due to rounding or editing. This will involve a significant amount of declaration gathering and depositions, both of employees and supervisors. The Defendant contends that Plaintiff and all potential class members were properly paid. There are also complex legal issues for this Court's adjudication. As set forth in Defendant's Motion to Dismiss, the Complaint relies on new and untested theories of Ohio law which Defendant argues are not colorable and which this Court would need to analyze as a matter of first impression. In addition, Defendant has many individualized substantive defenses, including the FLSA Motor Carrier Exemption (which it contends applies to many of the potential class members, including Tith himself), the question of whether supervisors with timecard access (again, including Tith) may properly be members of the proposed class, whether the TKMNA rounding policy is lawful (see 29 CFR § 785.48), and whether the lunch break policy is lawful (*see White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869 (2012) and *Frye v. Baptist Mem. Hosp., Inc.*, 495 F. App'x 669 (6th Cir. 2012)). Therefore, this factor tips in favor of approving the settlement to avoid the unnecessary complexity and expense of a nationwide class and collective litigation leading through summary judgment, trial, and potential appeal.

### C. The Amount of Discovery Completed.

"[W]hen significant discovery has been completed, the Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Bronson v. Board of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984); *see also Bailey v. AK Steel Corp.*, 2008 WL 495539, *4 (S.D. Ohio Feb. 21, 2008). Here, the parties have exchanged written discovery including requests for admission, requests for production, interrogatories, and initial disclosures under Fed. R. Civ. P. 26. In addition, Defendant produced employee time records for the entire proposed collective and class pursuant to the mediation privilege which details each punch and edit made to an employee's timecard. Plaintiff's counsel had a full and complete opportunity to examine these records and interview a Resolution Economics representative to obtain any answers regarding the data or the scope and performance of the analysis. Since Plaintiff had the full opportunity to review all information necessary to evaluate the strength of the proposed collective and class-wide claims, this factor weighs in favor of approval.

### D. The Likelihood of Success on the Merits.

This factor weighs "plaintiffs' probability of success on the merits" against "the recovery provided in the proposed settlement agreement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, * 6 (S.D. Ohio May 30, 2012) (citing *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Here, Plaintiff's eventual success is far from certain. Plaintiff's Ohio state common law claims may be dismissed in their entirety. (See Defendant's Motion to Dismiss, Dkt. # 11). Defendant also contends that the nationwide collective, as defined by Plaintiff, is overbroad and inappropriate, and there is a substantial chance that any eventual collective or class (if any) will be significantly limited in geographic scope, and may

10

include only the warehouse employees in Dayton who worked along with Tith – totaling less than ten workers. *See, e.g. Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) (denying certification where damages could not be calculated without individual inquiry); *Harrison v. McDonald's Inc*, 411 F. Supp. 2d 862, 868-69 (S.D. Ohio 2005) (denying conditional certification in case regarding alleged timecard edits); *Rutledge v. Claypool Elec., Inc.*, 2012 U.S. Dist. LEXIS 178647 (S.D. Ohio Dec. 17, 2012) (denying conditional certification where plaintiff failed to introduce admissible evidence showing a similarly situated group of employees).

In addition, Defendant believes that the recent Sixth Circuit decisions *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869 (2012) and *Frye v. Baptist Mem. Hosp., Inc.*, 495 F. App'x 669 (6th Cir. 2012) weigh strongly against Plaintiff's likelihood of success on his missed lunch break claims, and that TKMNA's time rounding policy was lawful under 29 C.F.R. § 785.48.

Plaintiff, by contrast, contends that he would ultimately succeed on these issues. However, Plaintiff's counsel realizes that litigation is uncertain and that TKMNA's defenses could limit or preclude recovery. Counsel has weighed these risks and, in their considered opinion, believes that an immediate and certain settlement benefits the Plaintiff and the putative collective and class members more than a lengthy litigation with an ultimately uncertain outcome. *See Swigart v. Fifth Third Bank*, 2014 WL 3447947, *3 (S.D. Ohio July 11, 2014) ("While Plaintiffs continue to believe that they would ultimately prevail on these issues, they recognize the inherent risk of litigation and trial... By agreeing to the settlement, these risks are

eliminated and participating class members are guaranteed to receive an excellent recovery now."). Thus, this factor supports approving the settlement.

### E. The Opinion of Class Counsel and Class Representatives.

As noted above, Plaintiff is represented by experienced counsel who have diligently pursued this lawsuit and believe that this settlement represents a fair compromise for all parties. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("absent fraud collusion, or the like, [the trial judge] should be hesitant to substitute its own judgment for that of counsel."). Similarly, Tith, who is the only named representative, concurs that the settlement is fair and reasonable. He actively participated in the mediation and has signed the settlement agreement. Thus, this factor weighs in favor of approval.

### F. The Reaction of Absent Class Members.

Here, the absent members of the putative collective and class have not been given notice of the settlement. Members of the Settlement Collective will have the opportunity to review the terms of this settlement and before choosing to opt-in. Thus, this factor is neutral and best addressed, if necessary, at the Fairness Hearing.

### G. Public Interest in the Settlement.

This settlement does not directly touch on the public interest, as the causes of action asserted here are wholly private. Nonetheless, there is a well-established public policy favoring the settlement of class and collective actions in order to avoid a potentially long and protracted litigation and "free the Court's valuable judicial resources." *In re Broadwing*, 252 F.R.D. 369, 376 (S.D. Ohio 2006); *see also Hainey v. Parrott,* 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007).

12

**H.    The Proposed Ohio Class Settlement is Also Appropriate.**

The parties also request that the Court approve the Proposed Ohio State Law Settlement Class pursuant to Fed. R. Civ. P. 23(e) and order notice be distributed in accordance with the Settlement Agreement. Courts within this circuit apply the same seven-factor test discussed above when ruling on motions for approval under Rule 23(e). *Gentrup, supra,* 2011 WL 2532922 at *2; *Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, *3 (E.D. Ky. 2008). Thus, the proposed Ohio class settlement should be approved for the same reasons previously set forth.

Moreover, the Proposed Ohio State Law Settlement Class meets the basic requirements for class certification as set forth in Fed. R. Civ. P. 23(a). As defined by the Settlement Agreement, this limited class consists of the hourly warehouse workers who worked alongside Tith at the Copper and Brass plant in Dayton. The numerosity requirement is met because they are part of a global proposed settlement involving over 300 current and former employees. There are multiple issues of law and fact common to the Dayton employees, who were subject to the same plant policies and work conditions and were supervised by the same plant manager, Ted Anielski. Tith, as a longtime Dayton warehouse employee, has claims that are typical of the claims of the other Dayton warehouse workers. Finally, both Tith, as class representative, and Bieser Greer and Landis LLP, as counsel, have fairly and adequately represented the interests of the proposed Ohio class. *See Senter v. GMC,* 532 F.2d 511, 525 (6th Cir. 1976) ("(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.").

13

**V. CONCLUSION.**

Thus, of the seven factors which Courts consider in ruling on proposed FLSA and class action settlements, six favor approving this settlement agreement and one is neutral. The parties firmly believe that this settlement represents a fair and reasonable compromise of a *bona fide* dispute and brings a just and expeditious end to a complex litigation. They therefore respectfully request that the motion be granted. A proposed order approved by both parties is being submitted for this Court's convenience and consideration.

    Respectfully Submitted,

| | |
|---|---|
| */s/Charles F. Shane* | */s/William J. O'Neill* |
| Charles F. Shane (0062494), TA | William J. O'Neill (0029936) |
| James H. Greer (0046555) | Douglas B. Schnee (0063643) |
| Thomas M. Hess, Jr. (0089667) | McDONALD HOPKINS LLC |
| BIESER, GREER & LANDIS LLP | 600 Superior Avenue, East – 21st Floor |
| 400 PNC Center | Cleveland, OH 44114 |
| 6 North Main Street | woneill@mcdonaldhopkins.com |
| Dayton, Ohio 45402-1908 | dschnee@mcdonaldhopkins.com |
| Telephone: (937) 223-3277 | Telephone: (216) 348-5400 |
| Facsimile: (937) 223-6339 | Facsimile: (216) 3458-5474 |
| E-mail: cfs@bgllaw.com; jhg@bgllaw.com; tmh@bgllaw.com | *Counsel for Defendant* |
| *Attorneys for Plaintiff* | Katharine Parker (pro hac vice) |
| | PROSKAUER ROSE LLP |
| | Eleven Times Square |
| | New York, New York 10036 |
| | kparker@proskauer.com |
| | Telephone: (212) 969-3000 |
| | Facsimile: (212) 969-2900 |
| | *Of counsel for Defendant* |

14

Nigel F. Telman (pro hac vice)
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
ntelman@proskauer.com
Telephone:  (312) 962-3550
Facsimile:   (312) 962-3551
*Of counsel for Defendant*

Charles J. Stiegler (pro hac vice)
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
cstiegler@proskauer.com
Telephone:  (504) 310-4088
Facsimile:   (504) 310-2022
*Of counsel for Defendant*

**CERTIFICATE OF SERVICE**

      This is to certify that on the **11th** day of **December, 2014,** a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of filing to all counsel of record.

                                                BIESER, GREER & LANDIS, LLP

                                                */s/ Charles F. Shane*
                                                Charles F. Shane